UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES MIKEL LANGE,              )
                                )
            Plaintiff,          )   Case No. 1:06-cv-139
                                )
v.                              )   Honorable Wendell A. Miles
                                )
PATRICIA CARUSO et al.,         )
                                )
            Defendants.         )
_____)

### **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff pleaded guilty in the Oceana County Circuit Court to attempted kidnapping, MICH. COMP. LAWS § 740.349. On December 2, 2002, he was sentenced as a second habitual offender to imprisonment of two to seven-and-a-half years. In his *pro se* complaint, Plaintiff claims that he was erroneously forced to register under Michigan's Sex Offenders Registration Act (SORA), MICH. COMP. LAWS § 28.721 *et seq.*[1] He sues Oceana County Probation/Parole Officer August Engblade and the following employees of the Michigan Department of Corrections (MDOC): Patricia L. Caruso, Carolyn Zader, Becky Kosloski, Suzanne Carr, Tom DeNeve, Eric Smith, Kevin Smiley, Thomas G. Phillips, James Armstrong, Jeff Bauman and an unknown "Classification Specialist Supervisor." Plaintiff also sues Parole Board Chairman John Rubitschun and parole board members Marianne Samper, William Slaughter and James Atterberry. In addition, Plaintiff sues the following employees of the Michigan State Police: Tudarial J. Sturdivant, Karen Johnson, Amy Ronayne and Charlotte Marshal.

Plaintiff claims that Defendant Engblade completed the Presentence Investigation Report in his case on September 26, 2002, and advised Plaintiff that, under SORA, he was required to register as a sex offender. Plaintiff argued that the offense for which he was convicted was not subject to SORA because the victim was over eighteen, but signed the registration form under threat of additional felony charges for failing to register. When Plaintiff arrived at the Egeler Reception and Guidance Center on December 5, 2002, Defendant Zader required him to sign a change of

---

[1] Under SORA, a person convicted under MICH. COMP. LAWS § 750.349 is required to register as a sex offender only if the victim is under eighteen years of age.

- 2 -

address form for the sex offender registry.  Again, Plaintiff signed the form under protest.  On January 7, 2003, Plaintiff was transferred to the Pugsley Correctional Facility (MPF) and placed in Level I confinement.[2]  The following day, he was approved for placement in the less secure camp portion of the facility.  Later that month, Plaintiff sought the assistance of Assistant Resident Unit Supervisor Cynthia Follen to resolve the confusion surrounding whether he was required to register as a sex offender.  Follen consulted with Defendant Kosloski in the MDOC records office, who responded that Plaintiff was required to register.  Because he was registered as a sex offender, Plaintiff was removed from the camp portion of MPF and returned to secure Level I confinement.

Plaintiff initiated a grievance regarding his removal from the camp.  On March 10, 2003, Plaintiff received a response to his grievance, signed by Defendants ADW Carr and RUM DeNeve indicating that he would <u>not</u> be required to register as a sex offender.  A month later, however, DeNeve informed Plaintiff that he was required to register because the victim's unborn child was under the age of eighteen.  Over the next two years, Plaintiff continued to protest his registration.  After further correspondence with Defendant Engblade in February, 2005, Engblade referred the matter to the Oceana County Prosecutor's Office for further review. On March 21, 2005, the Oceana County Circuit Court issued an order removing Plaintiff from the registry.  The order indicated the victim was born on December 17, 1979, and the offense took place on December 29, 2001.  Because the victim was over eighteen years of age at the time of the offense, the court concluded that Plaintiff's offense was not subject to SORA.  Pursuant to the court's order, Plaintiff's name was removed from the list of registered sex offenders.

---

[2]In the MDOC, security classifications, from least to most secure, are as follows:  Levels I, II, III, IV, V, VI, and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶ H (effective May 28, 1996).  Plaintiff, therefore, was classified to the lowest security level.

Plaintiff claims that Defendants' "conduct was intentional, reckless, or negligently disregarding the truth of the matters asserted" and that they "breached their duty" to verify the requirements of SORA. As a result being a registered sex offender, Plaintiff claims that he was embarrassed, humiliated, and lost stature in the community. He also claims that as a result of the stigma associated with being a registered sex offender, his wife filed for divorce and his son committed suicide. Plaintiff further claims that he was transferred from the camp unit at MPF to a more restrictive Level I unit. In addition, Plaintiff claims that while he scored as having a high probability of parole under the parole guidelines, he was denied parole board on September 29, 2003 and July 29, 2004, as a result of the erroneous sex offender registration. Plaintiff ultimately was released on parole on February 21, 2006, after he was removed from the sex offender registry. Plaintiff seeks injunctive relief and monetary damages.

II.     Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff does not assert the violation of a specific federal constitutional right arising from the erroneous sex offender registration.[3] At most, Plaintiff's claim implicates the Fourteenth Amendment Due Process Clause. Under well-settled precedent, damage to reputation alone does not implicate a protected liberty or property interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976). In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court held that a plaintiff may not recover under § 1983 for damages to his reputation if the alleged defamatory acts did not also result in the deprivation of a constitutionally protected right or interest. In *Paul*, the Louisville Police Department distributed to local merchants a flyer that identified the plaintiff as "a person[ ] who [had] been arrested ... or [had] been active in various criminal fields . . . ." *Id.* at 695. Upon receiving the flyer, the plaintiff's employer issued the plaintiff a warning and threatened to fire him if he engaged in any misconduct. The plaintiff then sued the police department, alleging that the defamatory statements in the flyer "seriously impair[ed] his future employment opportunities." *Id.* at 696-97. In rejecting the plaintiff's claim, the Supreme Court observed that "[t]he interest in reputation alone which respondent seeks to vindicate . . . is quite different from the liberty or property [interests] recognized in [the Court's due process jurisprudence]." *Id.* at 711. As the Court went on to explain, a plaintiff cannot recover under § 1983 for injuries to his reputation alone; the alleged defamatory statements must also result in the deprivation of a constitutionally protected right or interest.

Both the Supreme Court and federal appellate courts have since applied *Paul*'s "stigma-plus" test in § 1983 actions in which plaintiffs seek damages for injuries resulting from

---

[3]Plaintiff contends that Defendants were "negligent" for forcing him to register as a sex offender and maintain his registration when he was not required to register under SORA. A claim of negligence arises under state, not federal law. Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

defamatory statements made by public officials, including challenges to state sex offender registration laws. *See, e.g.*, *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 4 (2003) (restating "stigma-plus" test in context of challenge to Connecticut's sex offender registry law); *Fullmer v. Michigan Dept. of State Police*, 360 F.3d 579, 581 (6th Cir. 2004) (restating "stigma-plus" test in context of challenge to the registration and public disclosure aspects of SORA); *Siegert v. Gilley*, 500 U.S. 226 (1991) (emphasizing that "[d]efamation, by itself, is a tort actionable under the laws of most states, but not a constitutional deprivation"); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993) ("Defamatory publications, standing alone, do not rise to the level of a constitutional claim, no matter how serious the harm to reputation"); *Silva v. Worden*, 130 F.3d 26, 32 (1st Cir. 1997) (stating that defamation does not rise to the level of constitutional injury under § 1983 unless the "reputational injury [is] accompanied by a change in the injured person's status or rights under substantive state or federal law").

In this case, Plaintiff does not allege or show that the damage to his reputation from appearing on the sex offender registry resulted in the deprivation of a constitutionally protected right or interest. Plaintiff first claims that he was twice denied parole as a result of his sex offender registration. Plaintiff, however, has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d

233, 235 (6th Cir. 1991). In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.

Plaintiff's related allegation that the Defendant members of the parole board relied upon "false information," i.e., the erroneous sex offender registration, in denying his parole in 2003 and 2004 also fails to implicate a liberty interest. Assuming that the parole board did rely on false or inaccurate information, Plaintiff's claim does not present any constitutional violation. *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Because Plaintiff has no liberty interest in being paroled, Plaintiff cannot show that the false information was relied upon to a constitutionally-significant degree. *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, NO. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695 (6th Cir. Mar. 14, 1986).

Plaintiff also claims that he was transferred from a prison camp to a more secure Level I facility as a result of the erroneous sex offender registration. The Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 244 (1976). A change in security

classification to a higher level of security, with nothing more, is not the type of atypical and significant deprivation in which an inmate might have a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-791 (6th Cir. 1995); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997). The Sixth Circuit has specifically held that "the denial of participation in a community placement program is not the type of atypical and significant deprivation in which the state might create a liberty interest." *Davis v. Loucks*, No. 96-1583, 1997 WL 215517, at *1 (6th Cir. Apr. 29, 1997) (citing *Sandin v. Conner*, 515 U.S. 472 (1995)). Likewise, Plaintiff does not possess a liberty interest in being placed in a prison camp. In the absence of a recognized liberty interest, Plaintiff's placement in a secure Level I facility raises no issue of constitutional magnitude.

In summary, Plaintiff fails to allege or show that the damage to his reputation from appearing on the sex offender registry resulted in the deprivation of a constitutionally protected right or interest. Plaintiff, therefore, has failed to state a due process claim under the "stigma-plus" test.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is

barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: April 18, 2006  /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge